Corina **TIEMEYER,** Plaintiff,

v.

**QUALITY PUBLISHING,
INC.,** Defendant.

**No. Civ.A. H–99–3196.**

United States District Court,
S.D. Texas,
Houston Division.

April 2, 2001.

Debra Jo Catlett, Catlett & Associates, Houston, TX, for Corina Tiemeyer, plaintiff.

Dean J Schaner, Scott M. Nelson, Haynes & Boone, Houston, TX, for Quality Publishing Inc, defendant.

## MEMORANDUM OPINION AND ORDER

HARMON, District Judge.

Pending before the Court is Defendant Quality Publishing, Inc.'s Motion for Summary Judgment (Inst. No. 25). After reviewing the record and the applicable case law, the Court concludes that Defendant's motion for summary judgment should be **GRANTED**.

## I. FACTUAL BACKGROUND

The essential facts of this case are undisputed. On July 1, 1998, Defendant Quality Publishing, Inc. ("QP"), the owner of seven magazines, including *Inside Houston Magazine ("Inside Houston")*, hired Plaintiff Corina Tiemeyer ("Tiemeyer") to be the Publisher of *Inside Houston* when Tiemeyer was fifty-six years old. Tiemeyer's employment was pursuant to an Employment Agreement ("Agreement"), executed by both parties, that contained a "bonus schedule." The bonus schedule provided that Tiemeyer would receive an annual bonus payment above her base compensation if she accomplished certain sales goals for the magazine. The terms of the Agreement, however, did not specify any sales goals or quotas, nor did it delineate any duration of employment or limit QP's right to terminate Tiemeyer's employment at any time and for any reason. The Agreement also did not contain any promise that QP would employ Tiemeyer until her retirement date.

As part of her job as publisher, Tiemeyer had broad responsibility over *Inside*

*Houston,* including the sales department. While sales of the magazine lagged in the Fall of 1998, QP's President and Chief Executive Officer, Laurette Veres ("Veres") and QP's Chief Operating Officer, Kelli Meyer ("Meyer") regularly discussed with Tiemeyer possible solutions to *Inside Houston'* s sales woes. At Tiemeyer's request, Veres and Meyer agreed to create the position of Sales Manager at *Inside Houston,* even though none of QP's other magazines had such a position. Tiemeyer, however, continued to have ultimate responsibility for *Inside Houston'* s sales performance.

By mid-December 1998, *Inside Houston'* s sales revenues continued to be substandard. In a memorandum to Veres and Meyer, dated December 13, 1998, Tiemeyer acknowledged the magazine's ongoing sales troubles and QP's concerns about her as an effective publisher. As she stated in the memorandum, "If it is decided that I'm not the person to be publisher, so be it."

In light of *Inside Houston'* s continued declining sales, Veres and Meyer held a meeting on December 29, 1998 to develop a strategy for the magazine's future and to set sales goals. In addition to Veres, Meyer, and Tiemeyer, Tom Burgess ("Burgess"), Roger Tremblay ("Tremblay"), and Andy Veres (Laurette Veres's father) attended the meeting. Burgess was the magazine's Sales Manager; and Tremblay and Veres were consultants who were not employed by QP. At the meeting, Tremblay discussed the demographics of the readership, including the age demographic, which was between twenty-five and fifty years of age. The meeting attendees then focused their discussion on targeting *Inside Houston* to the desired demographic as a way of improving sales.

When sales continued to slump over the next two months, Meyer offered Tiemeyer the position of Special Projects Director as part of Veres and Meyer's overall restructuring plan that also included making sales manager Burgess, thirty-seven years old, the new publisher of *Inside Houston.* The Special Projects Director position was a full-time position in which Tiemeyer would receive the same salary, and where her goals would be defined every six months. In the new position, however, Tiemeyer was not entitled to the Agreement's bonus schedule based on the magazine's sales. Tiemeyer rejected the Special Projects Director position, and, as a result, QP terminated Tiemeyer's employment on February 22, 1999. Tiemeyer was now fifty-seven years old.

On May 14, 1999, Tiemeyer filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that QP terminated her employment based on her age. Specifically, Tiemeyer's allegations of age discrimination centered around only her discharge; she did not complain of any other employment action or practice taken by QP during her eight-month employment. After receiving her "right to sue" letter from EEOC, Tiemeyer filed suit in this Court, asserting claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), breach of contract, and fraud.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.* In a motion for summary

judgment, the burden is on the movant. *Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir.1990). If the nonmovant bears the burden of proof at trial, however, the movant for summary judgment need not support the motion with evidence negating the opponent's case. Instead, the movant may satisfy its burden by showing that there is an absence of evidence to support the nonmovant's case. *Id.; Little,* 37 F.3d at 1075.

Once the movant makes this showing, the burden shifts to the nonmovant to show that summary judgment is not appropriate. *Little,* 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538, (1986); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 871–73, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Hopper v. Frank,* 16 F.3d 92, 97 (5th Cir.1994); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir.1994)). Rather, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting FED. R. CIV. P. 56(e)). In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the nonmovant. *Richter v. Merchants Fast Motor Lines, Inc.,* 83 F.3d 96, 98 (5th Cir.1996) (per curiam); *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990).

## III. DISCUSSION

### A. Tiemeyer's ADEA Claim.

■ In its present motion for summary judgment, QP first argues that Tiemeyer has failed to establish a prima facie case of age discrimination under the ADEA. QP points out that Tiemeyer's entire ADEA claim is premised on only three facts: (1) her replacement as publisher by Burgess; (2) two alleged comments by non-employees at a meeting that occurred months before Tiemeyer's termination; and (3) Tiemeyer's disagreement with QP's business practices and decisions. QP takes the position that these three instances, singularly or together, do not raise an inference of age discrimination.

■ The Court analyzes employment discrimination claims such as Tiemeyer's under the now familiar three-step, burden-shifting framework of *McDonnell Douglas v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 680 (5th Cir.2001); *Lindsey v. Prive Corp.,* 987 F.2d 324, 326 (5th Cir.1993). First, the employee must raise a genuine issue of material fact as to each element of his prima facie case. *See Medina,* 238 F.3d at 680. Then, the employer must articulate a legitimate, nondiscriminatory reason for its employment decision. *See id.* Finally, the employee must raise a genuine issue of material fact as to whether the employer's proffered reason was merely a pretext for age discrimination. *See id.*

■ To establish a prima facie case of age discrimination under the ADEA, a plaintiff must prove four elements: (1) he is a member of a protected class; (2) he was qualified for the position that he held; (3) he was discharged; and (4) after his discharge was replaced with a person who is not a member of the protected class. *Brown v. Bunge Corp.,* 207 F.3d 776, 781 (5th Cir.2000). It is only after establishing a prima facie case that the presumption is

created that the employer unlawfully discriminated against the employee. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 525, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 992 (5th Cir.1996) (en banc).

According to QP, Tiemeyer's ADEA claim "fails at the starting gate" because she cannot show that she was discharged. (Def.'s Mot. for Summ. J. at 19.) Specifically, QP cites Seventh Circuit case law and argues that because Tiemeyer rejected the Special Projects Director position offered by QP, Tiemeyer cannot now assert that she was "discharged" or that she suffered an adverse employment action. QP's argument assumes that the Special Projects Director position constituted a "lateral job transfer," and that, as a matter of law, Tiemeyer's rejection of the position essentially constituted her quitting rather than being fired.

While the Court notes that other circuits have held that an employee who refuses a lateral job transfer cannot establish discharge or adverse employment action, *see, e.g., Flaherty v. Gas Research Inst.,* 31 F.3d 451, 452–53, 456–58 (7th Cir.1994) (concluding that a principal scientist who was offered a position as fuel cell project manager did not show how such a transfer constituted an adverse employment action), the Court finds that a genuine issue of fact exists in the instant case regarding whether QP's Special Projects Director position was one that was indeed on par with the position of Publisher. Although both positions offered the same salary and benefits, the Seventh Circuit has observed in *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132 (7th Cir.1993), that an actionable change in employment status might nonetheless be indicated by "a less

distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* at 136. Similarly, as noted in *Collins v. State of Illinois,* 830 F.2d 692 (7th Cir.1987), courts have also found adverse employment actions in circumstances where an employee was offered a new position with the same salary and benefit levels but the employer moved the employee's office to an undesirable location, transferred the employee to an isolated corner of the workplace, or required the employee to relocate his personal files while forbidding him to use the firm's stationary and support services. *Id.* at 703.

Assuming the Seventh Circuit's paradigm in this case, the question is whether the position of Special Projects Director had the same responsibilities, benefits, distinction, and uniqueness that Publisher had. While QP simply and conclusorily insists that the positions were comparable, it is undisputed that the Special Projects Director would not oversee the sales department, nor would it be ultimately responsible for the daily management and supervision of *Inside Houston.* Moreover, the Special Projects Director was not eligible for the bonus schedule that was contained in Tiemeyer's Employment Agreement. The Court consequently rejects QP's argument that Tiemeyer has failed to prove discharge merely because she rejected the Special Projects Director job. Rather, a genuine question exists as to the comparability of the two positions. The Court thus finds that, for the purposes of summary judgment, Tiemeyer has established a prima facie case of discrimination.

 In light of Tiemeyer's prima facie case, the burden shifts to QP to articulate "some legitimate, nondiscriminatory reason" for Tiemeyer's termination. *See Medina,* 238 F.3d at 680. As QP correctly

observes, QP's burden at this stage is slight: it need only produce some evidence that it discharged Tiemeyer for a nondiscriminatory purpose, but it need not persuade the Court that it was actually motivated by its proffered reason. *See Reeves v. Sanderson,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (recognizing that the employer's burden at the second stage of an employment discrimination analysis is a burden of production, not persuasion); *Hicks,* 509 U.S. at 506–07, 509, 113 S.Ct. 2742 (holding that the prima facie presumption of discrimination "simply drops out of the picture" once the employer merely articulates a nondiscriminatory explanation); *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089 (noting that an employer "need not persuade the court that it was actually motivated by [its] proffered reason"). To this end, QP simply argues that Tiemeyer was offered the Special Projects Director position because Veres and Meyer did not believe that Tiemeyer handled her sales responsibilities in a satisfactory manner. As discussed above, *Inside Houston*'s sales figures undisputedly lagged during Tiemeyer's tenure as Publisher, although it was primarily her responsibility to increase sales of the magazine. To improve sales, Veres and Meyer thus launched a reorganization initiative at the magazine and placed Tom Burgess in the Publisher position in hopes of increasing *Inside Houston*'s sales circulation.

■ QP's nondiscriminatory explanation now places the burden on Tiemeyer to rebut QP's reason by showing that such reason is merely pretextual. *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097. To carry this burden, Tiemeyer first points to the fact that QP replaced her with thirty-seven-year-old Tom Burgess as Publisher of *Inside Houston.* The Court finds that this fact alone neither points to pretext nor age discrimination. As noted by the Fourth

Circuit in *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir.1994), "the mere fact of replacement by a younger employee is not dispositive of age discrimination." *Id.* at 512. Similarly, in *Chappell v. GTE Prod. Corp.,* 803 F.2d 261 (6th Cir.1986), the Sixth Circuit pronounced the general rule that governs the instant situation: "The isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttable inference that the replacement was motivated by age discrimination." *Id.* at 267. "If it were, it would transform the ADEA into something akin to a strict seniority protection system." *Birkbeck,* 30 F.3d at 512.

In her response to QP's summary judgment motion, Tiemeyer secondly points to alleged remarks made by consultants Roger Tremblay and Andy Veres at the December 29, 1998 meeting where Veres, Meyer, Tiemeyer, and Tremblay discussed *Inside Houston*'s future plans and sales strategy. According to Tiemeyer, Tremblay stated that "the publisher of [*Inside Houston*] should fall within the demographics of the readers including age, closer to the higher end, say, in their 40s." (Pl.'s Orig. Pet. At 6.) Tiemeyer also claims that, at the same meeting, Andy Veres suggested that QP replace Tiemeyer with Burgess.

■ Although QP states that neither Veres nor Meyer recalls such statements being made at the December 29, 1998 meeting, the Court, viewing the facts in a light most favorable to Tiemeyer, takes Tiemeyer's recollections as true. *Richter,* 83 F.3d at 98; *Gremillion,* 904 F.2d at 292. Nonetheless, the Court agrees with QP's characterization of the comments as being "stray remarks" that demonstrate neither pretext on QP's part nor discriminatory motive on Veres and Meyer's.

The Fifth Circuit has held that a comment constitutes competent evidence of age discrimination when it (1) relates to the plaintiff's protected class, (2) is proximate in time to the complained-of adverse employment decision, (3) is made by a decisionmaker, *i.e.*, an individual with authority over the employment decision at issue, and (4) is related to the employment decision at issue. *See Rubinstein v. Administrators of the Tulane Educ. Fund,* 218 F.3d 392, 400 (5th Cir.2000) (citing *Davis v. CSC Logic,* 82 F.3d 651 (5th Cir.1996)). In the instant case, QP asserts that Tiemeyer's invocation of Tremblay and Andy Veres's statements fail as a matter of law because Tremblay and Andy Veres were not decisionmakers at QP, in that they were not managers, employees, or owners of QP. Rather, QP points out that Tremblay and Andy Veres were merely consultants. While Tiemeyer concedes that neither Tremblay nor Andy Veres had official decisionmaking duties at QP, Tiemeyer nonetheless argues that Tremblay and Andy Veres were *de facto* decisionmakers because they enjoyed a high degree of influence at QP. In particular, Tiemeyer claims that Tremblay "had a great deal of influence in to who [sic] QP hired," and that Andy Veres, as Secretary of QP and Laurette Veres's father, was trusted by Veres and Meyer. (Pl.'s Resp. to Def.'s Resp. to Summ. J. [sic] at 17.)

The Court finds such evidence insufficient to show pretext and discrimination on the part of QP because Tiemeyer has failed to point to any competent evidence in the record demonstrating Tremblay and Andy Veres's roles as decisionmakers at QP. Rather, she merely speculates in a conclusory fashion about the level of influence that both had over Veres and Meyer, who Tiemeyer concedes were the only people involved in the decision to terminate her employment. (Tiemeyer Dep. at 35–37.) While Tiemeyer points to the fact

that it was Tremblay who originally referred Tiemeyer to QP and the fact that Tremblay possessed vast "knowledge of the publishing business," the Court finds such facts irrelevant to the issue of whether Tremblay was, in fact, a decisionmaker with regard to Tiemeyer's termination at QP. Similarly, although Tiemeyer finds importance in the fact that Andy Veres's idea for a special insert called "Inside the Woodlands" in *Inside Houston* eventually came to fruition, such has no bearing on whether Andy Veres was a decisionmaker with regard to Tiemeyer's employment or termination at QP.

Tiemeyer cites *Haas v. ADVO Sys., Inc.,* 168 F.3d 732 (5th Cir.1999), to argue that an employer's age-related comments preclude summary judgment. Tiemeyer's reliance on *Haas* is inappropriate. In *Haas,* the Fifth Circuit found probative an age-related remark by a Vice President who interviewed the applicant and made a recommendation about the applicant to the ultimate hiring authority. *Id.* at 732–33. While the Vice President in *Haas* actually played a role in the employment decision at issue (*i.e.,* by interviewing the applicant), the evidence in the instant case fails to show that either Tremblay or Andy Veres had any role in Tiemeyer's termination and replacement. *See id.* at 733 (holding that, for an age-related comment to constitute competent evidence of discrimination, it must be, *inter alia,* "made by an individual with authority over the employment decision at issue"). Consequently, Tiemeyer's arguments regarding their remarks necessarily fail as a matter of law.

Finally, Tiemeyer argues that QP's nondiscriminatory reason for her termination was merely pretextual because QP: (1) never gave her any proper warnings before her discharge, (2) held her to a

different performance standard compared to other employees, (3) and failed to take into account other problems with *Inside Houston* that allegedly affected the magazine's sales performance under Tiemeyer's watch. Moreover, Tiemeyer argues that, while Veres and Meyer state that Tiemeyer failed to meet any of QP's sales goals for *Inside Houston*, they never set any sales goals by which to compare Tiemeyer.

██ The Court does not find Tiemeyer's arguments legally compelling. With regard to her claim that she was not warned before being offered the inferior Special Projects Director position, the Fifth Circuit has held that "whether [an employee] was warned that his job was in jeopardy is immaterial ... to a finding of age discrimination." *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 151 (5th Cir.1995). Indeed, "[t]he ADEA does not prohibit termination without warning." *Id.* In *Armendariz*, the Fifth Circuit placed special weight on the fact that the plaintiff in that case "testified that he participated in the two meetings in which [his superior] expressed grave concern about the high costs of doing business in the [the plaintiff's] division." *Id.* The Court finds the instant case closely analogous to *Armendariz* and holds that Tiemeyer's lack of warning of termination does not preclude summary judgment for QP.

Although Tiemeyer claims that she was held to a different performance standard compared to other employees at *Inside Houston*, that Veres and Meyer failed to take into account mitigating factors regarding *Inside Houston*'s sluggish sales under Tiemeyer's watch, and that Veres and Meyer never set sales goals for Tiemeyer, the Court finds that such arguments essentially seek judicial second-guessing of QP's business decisions. As the Fifth Circuit has held in *Little v. Republic Ref. Co.*, 924 F.2d 93 (5th Cir.1991), "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason." *Id.* at 97. As with the jurisprudence of Title VII, it is well established that the function of courts and juries is not to impose their judgments on the business decisions of employers. *See Deines v. Texas Dep't of Protective & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) (stating that "[w]hether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide"). Tiemeyer's subjective belief of discrimination underlying her QP's employment actions, without more, is insufficient to show pretext. *See Vance v. Union Planters Corp.*, 209 F.3d 438, 444 (5th Cir.2000) ("[A]n employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief.") (citation omitted). Moreover, the Court notes that Tiemeyer does not point to any aspect of the record that demonstrates the unfair treatment of which she now complains, especially relative to younger employees. *Cf. Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir.1991) ("To establish a claim of disparate treatment, Little must show that Republic gave preferential treatment to a younger employee under 'nearly identical' circumstances.") (citing *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990)).

As a final argument for summary judgment on Tiemeyer's ADEA claim, QP points out that it hired Tiemeyer when she was fifty-six years old and terminated her when she was fifty-seven. In *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996), the Fifth Circuit adopted the "same actor" inference accepted by many circuits. *Id.* at 658. As the *Brown* court quoted approvingly:

"Claims that employer animus exists in termination but not in hiring seem irra-

tional. From the standpoint of the putative discriminator, '[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.' "

*Id.* (quoting *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991)). In the instant case, the Court finds that the "same actor" inference applies. When considered in addition to QP's nondiscriminatory reasons discussed above, Tiemeyer's failure to demonstrate pretext becomes all the more apparent. *See id.* (holding that a plaintiff did not overcome the "same actor" inference that his employer's stated reason for discharging him was not pretext for age discrimination). QP is therefore entitled to summary judgment on Tiemeyer's ADEA claim.

**B. Tiemeyer's Breach of Contract Claim.**

■■■ In its Motion for Summary Judgment, QP additionally argues that it is entitled to judgment as a matter of law on Tiemeyer's contractual claim. Specifically, QP argues that Tiemeyer's employment was at-will; thus, any claim that QP was contractually bound to employ her for six years necessarily fails. QP additionally argues that the Statute of Frauds and parol evidence rule defeats Tiemeyer's contention that QP orally promised her that she would be Publisher until she retired.

■■■■ Under Texas law, the employee-employer relationship is presumed to be at-will. *See Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex. 1998); *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993). As QP correctly observes, in an at-will relationship, either party may terminate the employment relationship at any time and for any reason without incurring liability. *See Montgomery County Hosp.,* 965 S.W.2d at 502; *Ronnie Loper Chevrolet–Geo, Inc. v. Hagey,* 999 S.W.2d 81, 83 (Tex.App.-Houston [14th Dist.] 1999, no pet.). To overcome the at-will presumption, an employee must produce evidence of an express and specific agreement that modifies the at-will nature of the relationship; in this context, an implied agreement is insufficient. *See Montgomery County Hosp.,* 965 S.W.2d at 502; *Byars v. City of Austin,* 910 S.W.2d 520, 523 (Tex.App.-Austin 1995, writ denied). In *Brown,* the Texas Supreme Court stated that for "such a contract to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Montgomery County Hosp.,* 965 S.W.2d at 502. The burden thus rests on an employee to present specific and direct proof of an unequivocal contract for a specific term of employment. *Id.; Goodyear Tire & Rubber Co. v. Portilla,* 879 S.W.2d 47, 51 (Tex.1994).

In the instant case, while Tiemeyer concedes that the Employment Agreement contains no express limitation on the at-will employment relationship, she nonetheless points to the Agreement's year-to-year bonus schedule to argue that she had a six-year employment contract. The Court, however, finds Tiemeyer's argument without merit because the Agreement's bonus schedule does not unequivocally limit QP's right to discharge Tiemeyer; as a result, it does not defeat the at-will presumption. *See Montgomery County Hosp.,* 965 S.W.2d at 502. Moreover, the Fifth Circuit has recently held that an employment offer's term that contains "annual rate" language, without more, "fails to limit in a 'meaningful and special way' the employer's right to terminate at will." *Hamilton v. Segue Software, Inc.,* 232 F.3d

473, 478 (5th Cir.2000). Applying *Hamilton's* reasoning to the instant case, along with the general rule described in *Montgomery County Hosp.*, the Court holds that, as a matter of law, Tiemeyer's employment contract was at-will.

■ Indeed, the actual language of the Agreement shows this to be the case. The Agreement contains a provision allowing QP to discharge Tiemeyer for both "just cause" and "for any reason other than 'just cause.'" Such language clearly demonstrates that the parties contemplated an at-will relationship where QP could terminate Tiemeyer's employment at any time. *See Curtis v. Ziff Energy Group, Inc.*, 12 S.W.3d 114, 116–18 (Tex.App.-Houston [14th Dist.] 1999, no writ) (holding that an employment agreement is at-will, even when it specifies a term or duration, when it contains a provision allowing termination for any reason); *see also Hamilton*, 232 F.3d at 478 (affirming summary judgment for an employer on a former employee's breach of contract claim because the offer letter's language referring to "annual" salary and "annual" bonus was insufficient to alter at-will employment status).

■ The Court additionally holds that Tiemeyer's claim that QP orally promised her employment until she retired fails as a matter of law. QP's invokes the Statute of Frauds and argues that "Tiemeyer cannot rely on an alleged oral promise of employment until she retired because the alleged promise could not have been performed within a year." (Def.'s Mot. for Summ. J. at 29.) The Court finds QP's application of the Statute of Frauds inappropriate in the instant case, however, because QP has not shown that the parties specifically contemplated retirement age as strictly 65. As a result, Tiemeyer's retirement theoretically could have been performed within a year; she could have retired the day after the prom-

ise was made. *Cf. Crenshaw v. General Dynamics Corp.*, 940 F.2d 125, 128 (5th Cir.1991) (holding that an employer's alleged promise to employ a manager until his retirement *at age 65* was considered "permanent" and thus agreement had to be reduced to writing in order to be enforceable under the Texas Statute of Frauds). Nonetheless, QP is entitled to summary judgment on Tiemeyer's oral-promise allegation because the parol evidence rule precludes consideration of extrinsic evidence to contradict, vary or add to the terms of an ambiguous written agreement. *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 369 (Tex. App.—Houston [14th Dist.] 2000, no writ). The employment relationship between QP and Tiemeyer was defined by the written Employment Agreement; consequently, the Court in the instant case must be bound by it as well.

### C. Tiemeyer's Fraud Claim.

■ Tiemeyer's fraud claim essentially contends that QP entered into the Employment Agreement with no intent to perform the Agreement's terms. To establish a prima facie case for fraud, a plaintiff must show that: (1) the defendant made a material representation; (2) the representation was false; (3) the defendant made the representation knowing that it was false; (4) the defendant made the representation with the intent that the plaintiff rely on it; (5) the plaintiff acted in reliance on the misrepresentation; and (6) the plaintiff suffered an injury. *Haber Oil Co. v. Swinehart*, 12 F.3d 426, 437 (5th Cir.1994); *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex.1994). In its motion for summary judgment, QP argues that Tiemeyer's fraud count fails because she cannot show a false representation made by QP.

The Court agrees. According to Tiemeyer, the fact that Meyer did not sign the Employment Agreement until approximately two months after Tiemeyer became *Inside Houston's* Publisher supports a finding of fraud. QP correctly observes that even if Meyer's signature was exceedingly tardy, such delay was not a representation, much less a false, knowingly false, or material one. Moreover, Tiemeyer fails to point to any evidence in the record demonstrating that QP delayed in signing the Agreement with the intent that Tiemeyer somehow rely on such delay, or indeed that the delay damaged her. The Court also rejects Tiemeyer's argument that alleged omissions in the Employment Agreement evince fraud on QP's part. It is undisputed that Tiemeyer was the one who drafted the Agreement; as a result, any argument that Tiemeyer's omissions with regard to the Agreement show fraud on QP's part is meritless because the misrepresentation must be have been made by QP for Tiemeyer's fraud claim to be viable. *See Haber,* 12 F.3d at 437 (observing that a the plaintiff must show that the defendant made a false representation in a fraud claim). Tiemeyer additionally contends that Veres and Meyer represented that the Agreement was a long-term employment contract. The argument fails because, again, Tiemeyer points to no competent evidence that Veres and Meyer's alleged representations were false when made. *See id.* (stating that a defendant must know that his representation was false in a defamation claim). Because the elements of a prima facie case for fraud are lacking this case, the Court finds that QP is entitled to summary judgment on the claim. The Court also holds that, for the same reasons, Tiemeyer's fraudulent inducement claim necessarily fails. *See Hamilton,* 232 F.3d at 480 ("Under Texas law, a plaintiff establishes a fraudulent inducement claim by showing the elements of a simple fraud claim."); *Balogh v. Ramos,* 978 S.W.2d 696, 701 (Tex.App.-Corpus Christi 1998, pet. denied) ("The supreme court has defined fraudulent inducement as a simple fraud claim.").

## IV. CONCLUSION

In this case, QP is entitled to summary judgment on Tiemeyer's ADEA claim because she has failed to show how QP's nondiscriminatory reasons for her termination were pretextual. Instead, Tiemeyer relies on arguments that, as a matter of law, are insufficient to prove pretext. With regard to her contractual claim, Tiemeyer has failed to point to any evidence in the record that clearly shows that the parties contracted around Texas's presumption of at-will employment. Because the presumption still remains in this case, Tiemeyer's arguments that her employment was for a definite term are without merit. Finally, Tiemeyer's fraud claims fail because she cannot establish a prima facie case; specifically, she has not shown how QP knowingly made a representation that was false at the time it was made. Accordingly, the Court

**ORDERS** that Defendant Quality Publishing, Inc.'s motion for summary judgment is **GRANTED**.