*Court Of Appeals*
*Fourth Court of Appeals District of Texas*



★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00829-CV

The **CITY OF SAN ANTONIO**, Acting By and Through Its Agent,
City Public Service Board d/b/a CPS Energy,
Appellant

v.

Pedro **GONZALEZ**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-06967
Honorable Joe Frazier Brown, Jr., Judge Presiding

**OPINION ON APPELLEE'S MOTION FOR REHEARING**

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Catherine Stone, Chief Justice
               Phylis J. Speedlin, Justice
               Steven C. Hilbig, Justice

Delivered and Filed: December 23, 2009

REVERSED AND RENDERED

The motion for rehearing filed by appellee Pedro Gonzalez is denied. This court's

memorandum opinion and judgment dated November 4, 2009 are withdrawn, and this memorandum

opinion and judgment are substituted.

In this employment discrimination case, the City of San Antonio, acting by and through its agent, City Public Service Board d/b/a CPS Energy ("CPS Energy"), appeals the trial court's judgment rendered in favor of Pedro Gonzalez. Because there is no evidence that Gonzalez was treated differently than a similarly situated employee, we reverse the judgment of the trial court and render judgment that Gonzalez take nothing.

## BACKGROUND

Pedro "Pete" Gonzalez was employed by CPS Energy for 26 years before he was fired in October 2005. Prior to his termination, he was assigned to the Help Desk in the Information Communication Services ("ICS") division assisting other CPS Energy employees with their computer problems. Of the nine employees assigned to the Help Desk, Gonzalez was the only male. In July 2005, his supervisor, Martha Mitchell, placed him on a Performance Improvement Plan ("PIP"). The PIP cited Gonzalez as underperforming and made recommendations for him to improve his performance; the PIP also informed him that he risked termination if he did not improve his performance. Mitchell and her supervisor, Roy Elizondo, met with Gonzalez to explain the performance review. Gonzalez appealed, and because he thought Mitchell's assessment of his performance was mistaken and unfair, he asked that the PIP be struck from his record.

While his PIP appeal was pending, Gonzalez searched the CPS Energy hard drive for a service manual that had recently been revised. During the search, he discovered Mitchell's computer folder, which should have been accessible only to management. Gonzalez was able to open the folder, and inside he found Mitchell's draft response to his PIP appeal. According to Gonzalez, although surprised to find that he was able to open the document, he did read Mitchell's response and then printed a copy of it, which he took home. Thereafter, Gonzalez informed a departmental

co-worker, Yvonne Lewis, about his discovery. Lewis had also been placed on a PIP by Mitchell. Lewis used the file path given to her by Gonzalez and also opened Mitchell's folder.

Lewis told Gonzalez she would report the security breach to Human Resources, and did so about a week later by noting the following in her reply to Mitchell's response to Lewis's PIP appeal: "Note: My P.I.P. information is located on server CPS04928 (BISC-Mgmt) that can be viewed by other co-workers. There is no confidentiality." Some time later, wanting to confirm that the problem had been fixed, Lewis accessed Mitchell's folder a second time and was surprised to find that she could still access the folder. At that point, she called a co-worker over to her workstation to confirm what she was seeing, then printed the screen view so that she could show Deana Prado, Human Resources Business Advisor, that the problem still existed.

After CPS Energy secured the confidential folders and files, Elizondo and Stan Torvik, vice president of ICS, began to investigate the situation and set up a meeting with Lewis. At this meeting, CPS Energy first learned of Gonzalez's involvement. Lewis told Elizondo and Torvik that Gonzalez told her he found information about his PIP appeal and gave her the file path; Gonzalez told her he got the file path from another employee, Karen Speer. Lewis typed in the file path and saw Mitchell's folder, but denied opening any file or document within the folder.[1] Torvik asked Lewis to identify the co-worker, or "innocent bystander," to whom she had shown Mitchell's folder the second time. Lewis refused to name the co-worker, even though she was warned of the ramifications for failing to cooperate with an investigation.

---

[1] At trial, Gonzalez testified that Lewis opened the document within Mitchell's folder pertaining to her PIP and "read a little bit of it;" however, this information was not revealed to Torvik and Elizondo before deciding to terminate Gonzalez. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (appellate court views facts as they appeared to the person making the decision to terminate).

Torvik and Elizondo then called a meeting with Gonzalez. Gonzalez told them he stumbled across Mitchell's folder while looking for a recently revised service manual; he was given the file path address for the manual by Karen Speer. He did not find the manual, but was surprised to see Mitchell's folder. Since Mitchell was his supervisor, he thought the manual might be in her folder, so he opened it. Inside, he saw Mitchell's response to his PIP appeal. Gonzalez admitted knowing it was wrong to look at the document, but wanted to know why he was possibly going to be fired, so he opened it. He saw documents pertaining to other employees, but only opened and printed the one with his name on it. Gonzalez did not report the security breach to his supervisor, Mitchell, because he no longer trusted her, and because he relied on Lewis's assurance that she would report the problem.

Gonzalez was very nervous at the meeting with Torvik and Elizondo, and initially denied printing out the document. After being told that a search of his computer would reveal whether he had in fact printed the document, Gonzalez admitted doing so. According to Torvik, Gonzalez initially denied any wrongdoing, but then admitted that he opened, printed, and removed a confidential document from CPS Energy's property. Torvik felt like Gonzalez "opened Pandora's box" for the entire company because he accessed his supervisor's private documents. Elizondo also described Gonzalez as resistant to answering questions during the meeting.

Torvik described Gonzalez's violation of company policy as "significantly different" from Lewis's because Lewis did not open an actual document, but only viewed the folder, and Lewis reported the security lapse to CPS Energy so that the problem could be remedied. Also, Gonzalez

showed no remorse for his actions, but, according to Torvik, Lewis did.[2]  Additionally, Torvik did not believe that Gonzalez "stumbled" across Mitchell's folder while looking for a training manual, because an IT professional should have known where the manual was located.  Elizondo analogized the situation to the opening of a file cabinet — Lewis opened the drawer, saw the folders within, then shut the drawer and reported it to HR.  Gonzalez, however, opened the drawer, went through the folders, found a document, and took it.

On October 13, 2005, the same day they met with Gonzalez, Elizondo and Torvik sent a memo to HR recommending Gonzalez's termination based on the following misconduct: accessed supervisor's confidential information without authorization; failed to report a security weakness; disclosed information to another employee, leading to further unauthorized access of the supervisor's files; and misrepresented information during an investigation.  The next day, Prado sent a memo stating HR was not in concurrence with the recommendation for termination based on, among other things, "questionable evidence to defend potential EEOC charges in light of recent security breach of another otherwise good senior employee who was not term[inated]."  On October 20, 2005, Elizondo and Torvik amended their memo to state: "accessed, **printed and removed** . . . confidential information," and "**failed to cooperate by withholding information** and misrepresenting information concerning his misconduct" during an investigation. (emphasis reflects added language.)  Gonzalez was terminated the next day.  He was replaced by a female who was promoted from within the company.  Gonzalez opted to retire to maintain his benefits.

---

[2] Elizondo, however, did not describe Lewis as remorseful in the meeting, and Lewis testified that she was not remorseful.

Gonzalez filed a lawsuit for gender discrimination against CPS Energy. The case proceeded to a jury trial. The jury found that gender was "a motivating factor" in CPS Energy's decision to terminate Gonzalez's employment[3] and awarded damages for lost back pay and non-economic compensatory damages. The issues of future lost wages and benefits and attorneys' and expert fees were tried to the bench and the trial court awarded Gonzalez damages for each. The trial court entered judgment on the jury's verdict and the trial court's awards.

On appeal, CPS Energy argues: (1) the evidence is legally and factually insufficient to support the jury's finding that gender was a motivating factor in CPS Energy's decision to terminate Gonzalez's employment; (2) the trial court erred in failing to submit a jury question on CPS Energy's affirmative defense; and (3) the evidence is legally and factually insufficient to support the jury's damage awards.

## DISCUSSION

CPS Energy first contends the evidence is legally insufficient to support the jury's finding that gender was a motivating factor in CPS Energy's decision to terminate Gonzalez's employment because there was no evidence that Gonzalez was similarly situated to Lewis, the female co-worker whom Gonzalez claims was not fired even though she committed the same security violation.

---

[3] Question 1 asked:

Was gender a motivating factor in CPS Energy's decision to discharge Pedro Gonzalez?

> A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

> When considering the reason CPS Energy has given for its decision to discharge Pedro Gonzalez, you must focus on the motivations of the actual decision makers.

> If you find CPS Energy's reason for discharging Pedro Gonzalez is false, you may, but are not required to, infer that gender was a motivating factor.

*Standard of Review*

When considering a legal sufficiency challenge, we review the evidence in the light most favorable to the verdict giving "credit [to] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* Evidence is legally insufficient when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Id.* at 810.

*Applicable Law*

Under the Texas Commission on Human Rights Act ("the Act"), an employer may not discriminate against or discharge an employee based on "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code Ann. § 21.051 (Vernon 2006); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). To prevail on a claim of gender discrimination, a plaintiff must show that he or she was (1) a member of the class protected by the Act, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) treated less favorably than similarly situated members of the opposing class. *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam);(*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). In cases brought under the Act, we look to analogous federal precedent for guidance. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); *see also Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

The Texas Supreme Court has instructed that "[e]mployees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Monarrez*, 177 S.W.3d at 917. In a situation involving disparate discipline, the disciplined and undisciplined employees' misconduct must be of "comparable seriousness." *Id.* The court further noted that to prove discrimination based on disparate discipline, the plaintiff must usually show "that the misconduct for which [he] was discharged was nearly identical to that engaged in by a [female] employee whom [the company] retained." *Id.* at 918 (quoting *Smith v. Wal-Mart Stores, (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)). We must examine the facts as they appear to the person(s) making the decision to terminate. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004).

In *Monarrez*, two male bus mechanics sued the school district after they were terminated for committing time card violations while female bus drivers and/or bus attendants were merely reprimanded for violating the same policy. *Monarrez*, 177 S.W.3d at 916-17. The record revealed that the males engaged in more egregious conduct by clocking in and out for a co-worker who did not report to work, thus evidencing a conspiracy to conceal their co-worker's absence from work. *Id.* at 916, 918. The females, however, merely clocked-in for one another for the sake of convenience, not due to absence from work. *Id.* at 918. The Court held that when viewing the "nature and degree" of the time card violations, the respective violations were not of "comparable seriousness," and hence reversed the jury verdict in favor of the males because the evidence was legally insufficient to support their employment discrimination claims. *Id.*; *see also AutoZone*, 272 S.W.3d at 594-95 (holding that employee could not prove age discrimination where his alleged

violation of sexual harassment policy was more serious than comparator's, and therefore the two employees' circumstances were not "nearly identical").

*Analysis*

CPS Energy argues that four key differences between Gonzalez's and Lewis's conduct—as viewed through the eyes of Torvik and Elizondo—account for the difference in treatment the two employees received. First, Gonzalez not only accessed Mitchell's folder, but he also accessed, downloaded, printed, and took home a copy of a confidential document within the folder. Lewis, meanwhile, told Torvik and Elizondo that she accessed only Mitchell's folder and never opened a document within the folder. They had no reason to doubt Lewis's assertion that she did not open a document because Lewis was the one who came forward and notified CPS that a breach in confidentiality existed. Because Lewis told Torvik and Elizondo that she did not open a document, they did not ask her whether she printed a document. Second, as the undisputed evidence at trial showed, Gonzalez did not report the security breach to CPS Energy, but Lewis did. Third, Gonzalez admitted opening the PIP document because he wanted to know why he was possibly going to be fired. Lewis, however, accessed Mitchell's folder merely to confirm that her confidential information was exposed. Finally, CPS Energy felt that Gonzalez encouraged another employee to access confidential information, while Lewis asked a fellow employee to view Mitchell's folder icon merely to verify that the security problem had not been fixed after she first reported it. According to CPS Energy, these distinctions make Gonzalez's conduct more serious than Lewis's. Because Gonzalez's conduct was more serious than Lewis's, the two are not nearly identical, and therefore there is no evidence that they are similarly situated.

Gonzalez responds that the two employees are similarly situated because they had the same supervisor and the same job responsibilities, and also violated the same security policy. However, according to *Monarrez*, we must look at the conduct at issue and determine whether Gonzalez's and Lewis's misconduct was of "comparable seriousness." *Monarrez*, 177 S.W.3d at 917. As we have previously discussed, *Monarrez* involved two groups of workers who violated the same policy—both the males and the females impermissibly clocked in and out for one another. *Id.* at 918. Yet the court concluded that the manner in which the two groups violated the time card policy accounted for the difference in treatment. *Id.* Because the females clocked in for one another for the sake of convenience, they received written or verbal reprimands. *Id.* The males, however, clocked in for an employee who was not at work, and thus conspired to conceal another's employee's absence. *Id.* Because the two groups' respective misconduct was not of "comparable seriousness," they were not similarly situated as a matter of law. Similarly, even though Gonzalez and Lewis violated the same security policy by viewing their supervisor's confidential folder, Gonzalez's misconduct was more egregious than Lewis's because he admitted to opening a document within Mitchell's folder to gain information about his PIP appeal. Furthermore, he failed to report the security lapse to CPS even though he admitted that he should not have relied on Lewis to report it. These two differences demonstrate that Gonzalez's and Lewis's misconduct was not of "comparable seriousness." *Id.* at 917-18.

Gonzalez further argues that he and Lewis are similarly situated because the amended termination memo created a permissible inference that CPS attempted to "cover its tracks" after receiving Prado's memo objecting to Gonzalez's immediate termination. However, the amended memo did not alter or exaggerate the reasons stated for termination in the original memo, but instead

added two details, namely that Gonzalez printed and removed confidential information from CPS premises, and that he failed to cooperate with the investigation by withholding information. Both details were true as admitted by Gonzalez himself.

Finally, Gonzalez contends that the jury was free to find that his and Lewis's violations were of comparable seriousness because the evidence was not consistent as to what the reasons were for terminating Gonzalez. Specifically, Torvik testified that he ultimately decided to terminate Gonzalez because Gonzalez was not remorseful for his actions and lacked forthrightness during the investigation. Yet, Gonzalez notes Torvik testified that Lewis failed to answer every question during the investigation (*i.e.*, because she refused to name the "innocent bystander" Lewis was also less than forthright) and Lewis testified that she was not remorseful "about breaking the rules." Again, these inconsistencies do not amount to more than a scintilla of evidence that Gonzalez and Lewis were similarly situated because the undisputed evidence demonstrates that Gonzalez admitted to opening, printing, and taking home a confidential document and to failing to report the security lapse.

We conclude that, on the record before us, there is no evidence that Gonzalez's and Lewis's respective misconduct was of "comparable seriousness." *Id.* at 918. Viewing the undisputed evidence, there were considerable differences in the nature and degree of the misconduct by Gonzalez and Lewis. Gonzalez not only accessed Mitchell's folder, but he opened the confidential document pertaining to his PIP appeal within the folder, then printed it and took it home. He admitted that even though it was wrong to view the document, he looked at it because he wanted to know why he was possibly going to be fired. Additionally, Gonzalez failed to report the security breach to CPS Energy. Even though he relied on Lewis's assertion that she would report the problem, he also admitted that he should have reported himself. Although it may be disputed

whether Lewis reported the breach in a timely manner, or whether she reported merely for reasons of self-interest, the undisputed fact is that she did bring the breach to CPS Energy's attention, and Gonzalez did not. Even when viewing the evidence in the light most favorable to the judgment, we cannot conclude that Gonzalez's and Lewis's circumstances were "nearly identical" for the purposes of establishing discrimination based upon disparate discipline. *AutoZone*, 272 S.W.3d at 594. Accordingly, on this record, there is no evidence that CPS Energy treated Gonzalez differently than any other employee because of his gender. *See id.*; *Monarrez*, 177 S.W.3d at 918. CPS Energy's first issue is sustained. Because our resolution of this first issue is dispositive, we do not reach CPS Energy's remaining issues on appeal. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

The judgment of the trial court is reversed and judgment is rendered that Gonzalez take nothing.

Phylis J. Speedlin, Justice