**Peggy Ruth DAVIN, Plaintiff-Appellant,**

v.

**DELTA AIR LINES, INC.,
Defendant-Appellee.**

No. 80–7345.

United States Court of Appeals,
Fifth Circuit.*
Unit B

June 14, 1982.

Fletcher Farrington, Savannah, Ga., for plaintiff-appellant.

Powell, Goldstein, Frazer & Murphy, R. Carl Cannon, Eugene G. Partain, Susan Q. Downer, Atlanta, Ga., for defendant-appellee.

* Former Fifth Circuit Case, Section 9(1) of Public Law 96–452—October 14, 1980.

Before GODBOLD, Chief Judge, TJO-FLAT and THOMAS A. CLARK, Circuit Judges.

TJOFLAT, Circuit Judge:

Peggy Ruth Davin brought this action in the district court against her former employer, Delta Air Lines, Inc., claiming that Delta improperly terminated her because of her sex and her participation in a federally protected labor activity. Following a trial, in which the district court utilized an advisory jury, see Fed.R.Civ.P. 39(c), the court concluded that Davin failed to make out a prima facie case of sex discrimination and that she was not discharged for engaging in protected labor activity. Accordingly, judgment was entered for Delta. Davin appeals, challenging both of these conclusions and seeking a new trial. We affirm.

I.

Peggy Ruth Davin began her career with Delta in 1955 as a reservations agent in Cincinnati, Ohio. She was then twenty-five. Davin transferred to Delta's reservations office at Travis Field in Savannah, Georgia, in 1956 and stayed there until her discharge in November 1978. During the last eleven years of her employment, Davin was a customer service agent at Delta's ticket counter; she sold tickets, checked in passengers and their baggage and handled customer problems and complaints.

Davin never got along with her fellow employees. She complained constantly, spread vicious rumors against those she did not like, and let it be known that she could cause them trouble through her connections in the company or through her husband, a captain in the local police department. Because Delta's employees at Travis Field were afraid to complain about Davin, the company's records prior to 1978 indicated that her performance was more than satisfactory.

Management first learned of Davin's disruptive behavior in March 1978. In that month C. A. Thompson, Delta's assistant vice president for stations, went to Savannah to investigate charges made by twelve Travis Field customer service agents, including Davin, that the conduct of one of their supervisors, Tom Vaiden, detracted from the working environment at the ticket counter. These employees contended, among other things, that Vaiden was stealing liquor from Delta's hospitality room, was continually absent from his work station and was showing favoritism to one or two customer service agents, all of which disrupted their work. After a thorough investigation, Thompson concluded that the charges were either unfounded or the result of misunderstandings on the part of some of the complainants. However, Thompson felt that the filing of the charges seriously impaired Vaiden's ability to perform his supervisory job, so he transferred Vaiden to the operating section of Delta's Travis Field station.

During his investigation of the charges against Vaiden, Thompson received several reports of Davin's poor reputation among Delta's staff at Travis Field. One of Davin's coworkers told Thompson that Davin had created such an unpleasant atmosphere that she wanted to transfer to another Delta office. Thompson related this information to William Nordmark, Delta's regional manager of stations in Atlanta, and directed Nordmark to monitor Davin's performance closely.

Davin's disruptive conduct continued unabated during the ensuing seven months. On November 8, Davin violated Delta's procedures by selling first class tickets to two passengers holding coach class reservations, though she knew that the first class section was full. Two passengers holding valid first class tickets were consequently given coach seats, and they complained. When Danny Spell, Delta's lead customer service agent, discovered what Davin had done, he reported the incident to the shift supervisor, Henry Jackson, who called Davin into his office to discuss it. During the discussion that followed Davin said that if she had done anything wrong it was getting caught. She also spoke disparagingly of Danny Spell for reporting the incident. Jackson made a memorandum of this meeting and sent it to

Delta's station manager at Travis Field, Gary Moore.

On November 20, a Delta employee told Danny Spell that Davin had said she would get Spell fired for reporting the overbooking incident; Spell communicated this information to Moore. Moore immediately placed Davin on six months probation and informed Nordmark of his action. Nordmark considered Davin's threat against Spell a serious matter and launched a thorough investigation of Davin's job performance. He ultimately concluded that Davin's threat against Spell was a typical, although more serious, example of Davin's conduct over the preceding seven years and that Davin should be discharged. He so advised his supervisor, C. A. Thompson, who made the decision to fire Davin.

On November 29, 1978, Delta advised Davin that it was discharging her because of the deleterious impact her conduct had had on its Travis Field staff, her overbooking of first-class passengers on the November 8 flight and her retaliation against Danny Spell for reporting that incident to her superiors.

In December 1978, Davin filed charges with the Equal Employment Opportunity Commission (EEOC) and the Secretary of Labor alleging that Delta was guilty of sex and age discrimination in two respects: first, by failing to promote her from the customer service agent position she held for eleven years and, then, by terminating her employment when she reached 48 years of age. In April 1979, both EEOC and the Secretary rejected these charges and issued right-to-sue letters. Davin thereafter commenced this action seeking reinstatement, back pay and damages.

Davin's complaint repeated the allegations she had made in the administrative proceedings before EEOC and the Secretary of Labor: that Delta had discriminated against her on account of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) (1976) (Title VII), and because of her age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) (1976). Davin also alleged that Delta violated section 2 (Fourth) of the Railway Labor Act, 45 U.S.C. § 152 (Fourth) (1976),[1] by discharging her for participating in the charges made against Tom Vaiden. Finally, Davin alleged in a pendent state law claim that Delta had defamed her character. After the parties joined issue, a jury was impaneled to try Davin's claims of age discrimination and defamation of character and to advise the court, pursuant to Fed.R.Civ.P. 39(c), on the claims of sex discrimination and protected labor activity.[2] Both sides presented evidence, and the jury found for Delta on all issues. Judgment was entered pursuant to the jury's verdicts on the age discrimination and defamation claims.

The jury's advisory verdicts concerning the sex discrimination and protected labor activity claims were adopted by the court and incorporated in its findings of fact. The court found that Delta terminated Davin solely because she impaired the job performance of Danny Spell and several other Delta employees by creating the impression that she could get them fired. The court further found that Davin's participation in the complaints against Tom Vaiden played no part in Delta's decision. In its conclusions of law, the court held that Davin had failed to make out a prima facie case of sex discrimination because she had not proved that she and a male employee had received

1. Davin alleged in her complaint that section 2 (Fourth) of the Railway Labor Act, 45 U.S.C. § 152 (Fourth), creates by implication a private cause of action for reinstatement, back pay and damages in favor of any employee whose employment is terminated for engaging in concerted activity to improve conditions of employment. Delta moved to dismiss Davin's Railway Labor Act claim on the ground that the Act did not imply such a cause of action. The district court denied Delta's motion. In this appeal, Delta has not questioned this ruling; we therefore do not consider it. We simply assume, without deciding, that section 2 (Fourth) implies the cause of action Davin has pleaded.

2. Midway through the trial, Davin withdrew her contention that Delta's failure to promote her was unlawful.

disparate treatment for engaging in similar misconduct. It also concluded that her discharge was not in retaliation for her participation in protected labor activities.

## II.

In this appeal Davin questions only the district court's conclusions that she was not terminated because of her sex, in violation of Title VII, or because she complained to management about Tom Vaiden's conduct on the job, an activity protected by the Railway Labor Act. She first contends that the court applied the wrong legal standard to her Railway Labor Act claim.

According to Davin, the court considered only whether Delta's reasons for discharging her were legitimate and, upon finding that they were, concluded that Davin had failed to prove her claim. Davin contends that a finding of a legitimate reason for discharge is not enough, standing alone, to defeat a claim under section 2 (Fourth) of the Railway Labor Act; the question is, rather, whether the employer's motive for discharge is valid. In this instance, according to Davin, Delta's motive was to retaliate against her for complaining to management about the working conditions created by Tom Vaiden's on-the-job conduct.

To our knowledge the type of claim that Davin brought under section 2 (Fourth) for reinstatement, back pay and damages has not been made before this or any other court. Section 2 (Fourth) does not explicitly authorize such a claim, see note 1, *supra*, and nothing in our jurisprudence, save the district court's rulings below, suggests that the section implies one. Davin presents no authority, therefore, as to the elements that constitute a section 2 (Fourth) cause of action or what the employer must show to escape liability once the employee makes out a prima facie case. For sake of argument, however, we will assume that Davin established a prima facie case and that it was then Delta's burden to prove that its motive for terminating Davin was lawful. ■ Davin's contention that the court failed to consider whether Delta had met this burden is utterly without merit. The

court carefully examined the evidence to ascertain whether Delta discharged Davin because she joined other employees in complaining of the effect of Vaiden's conduct on their working conditions. It concluded that Davin's discharge was wholly unconnected with that complaint. Since the evidence in support of this finding of fact was overwhelming, we shall not disturb it. The district court's disposition of Davin's Railway Labor Act claim was proper.

We now consider Davin's claim that the court erred in concluding that she failed to prove one of the elements necessary to establish a prima facie case of sex discrimination, disparate treatment on account of sex. Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and its progeny, Davin was required to prove that: (1) she is a woman; (2) she was qualified to be a customer service agent; (3) she was discharged; and (4) after her discharge, Delta either hired a man to replace her or retained a man who had engaged in conduct similar to that for which Davin was terminated. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Rohde v. K. O. Steel Castings, Inc.*, 649 F.2d 317, 322 (5th Cir. 1981); *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980); *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1255 (5th Cir. 1977).

■ It is undisputed that Davin proved the first three of these elements. As to the fourth, Davin failed to prove that she was replaced; her burden, therefore, was to establish that the misconduct for which she was discharged was nearly identical to that engaged in by a male employee whom Delta retained. To satisfy this burden she cited the case of Tom Vaiden. Davin contends that Vaiden also threatened to have a coemployee fired.

The threat Davin refers to occurred in March 1978 when C. A. Thompson was in Savannah to investigate the charges that Davin and her fellow employees had lodged against Vaiden. When Vaiden learned of

the purpose of Thompson's visit, he called Paul Donnelly, one of the customer service agents, to his office and told him that the customer service agents should go ahead and have their "little meeting," but afterwards he would "settle up with them." Donnelly related this remark to station manager Moore, but nothing came of that report. Thompson's investigation, as we have stated, revealed that the charges against Vaiden were principally the result of misunderstandings; nevertheless Vaiden was transferred to another duty station because his continued presence at the ticket counter would have been disruptive to the working environment.

In Davin's view, Vaiden's misconduct was identical to hers and should have resulted in the same disciplinary action. Since it did not, Davin concludes, she made out her prima facie case. *See Rohde v. K. O. Steel Castings*, 649 F.2d 317 (disparate treatment proved when female employee was discharged for engaging in fight with a male employee who was retained); *Turner v. Texas Instruments*, 555 F.2d at 1255 (prima facie case made out by the discharge of Turner, a black, for a timeclock infraction and the retention of a white employee after an identical violation).

Davin's disparate treatment argument ignores the district court's finding that Vaiden's "misconduct" was not so similar to Davin's that Delta was obligated to treat the two equally. The court did not consider Vaiden's remark to Donnelly a threat, since it neither placed Donnelly in fear nor altered his behavior in any way. Davin, on the other hand, made a true threat against Spell. In addition, she had engendered fear in the employees at the ticket counter for at least seven years. With these findings, which are well supported by the record, the court was authorized to conclude that Davin had not shown disparate treatment at the hands of Delta and therefore had failed to prove a prima facie case of sex discrimination.[3]

---

**3.** We therefore need not address Davin's argument that Delta's reason for terminating her

The judgment of the district court is AFFIRMED.