Sherry A. SMITH, Plaintiff-Appellant, Kenneth H. Molberg, et al., Appellants,

v.

WAL–MART STORES (NO. 471), Defendant-Appellee.

No. 89–1592
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1990.

**1178**

Kenneth H. Molberg, William C. Isbell, Dallas, Tex., for plaintiff-appellant.

Michael H. Collins, David M. Pyke, Doris A. Harvey, Grace C. Cadoret, Locke, Purnell, Rain, Harrell, Dallas, Tex., Ronald A. Williams, Wal–Mart Stores, Inc., Bentonville, Ark., for defendant-appellee.

Before GEE, DAVIS and JONES, Circuit Judges.

PER CURIAM:

The case before us today concerns an appeal from the district court's holding that no gender-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e, *et seq.*, exists in appellant Smith's claim against Wal–Mart stores. Smith challenges the factual findings and an evidentiary ruling of the trial court. We hold today that the clearly erroneous standard attending an attack on the trial court's findings eludes Smith as does the showing of substantial prejudice necessary to topple an evidentiary ruling. Accordingly, the decision of the district court must stand.

### Facts

Sherry A. Smith was employed by Wal–Mart for a period of months in 1985. During her employment, Wal–Mart had in force a non-fraternization policy. The policy provided in pertinent part as follows:

### YOUR PERSONAL CONDUCT

\*   \*   \*   \*   \*   \*

No two associates shall become involved socially wherein the result can lead to secretive meetings or the exchange of personal affection. When this happens, the associates involved are subject to severe reprimand or immediate dismissal. (Obviously, this policy exempts two Wal–Mart associates married to each other.) If two single associates wish to date (out of store or facility), they must ask approval of their immediate supervisor in advance.

While employed, Smith dated David Elledge, a fellow Wal–Mart employee. Management discovered the breach in policy and, in the person of co-manager Richard Cudd (who had himself transgressed other aspects of Wal–Mart's personnel policy), terminated Smith. The reason for her termination stated in her papers was her violation of the non-fraternization policy. Smith immediately informed Elledge of what had happened and Elledge promptly resigned on that same evening.

### Discussion

We will briefly rehearse here the order of progression regarding the proving up of a Title VII claim of discrimination. The Supreme Court in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) plotted the distribution of the burdens onto a neat graph. That decision controls the mechanics of Title VII claims and predicates the following regime of proof:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

450 U.S. at 252–53, 101 S.Ct. at 1093, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973) (citations omitted). Once the plaintiff sets forth her prima facie case, then, the burden of production shifts to the defendant to produce a legitimate non-discriminatory reason for its conduct. This burden is discharged when "the employer ... produce[s] admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* 450 U.S. at 257, 101 S.Ct. at 1096. At that point the presumption created in her favor by the plaintiff's prima facie case dissolves and she must fulfill her burden of persuasion by demonstrating that the proffered reason was pretextual. This she may do by "either directly ... persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095 (citation omitted).

Today we review a decision of the district court that held that the plaintiff did not even establish her prima facie case. Consequently, for the district court, the inquiry might have stopped short of the second phase of the *Burdine* formula where the defendant shoulders the burden of production. The district court did, however, pass on Wal–Mart's proffered reason for its conduct (i.e., that Smith had violated the non-fraternization policy and that its decision to terminate Elledge was foiled only because Elledge first resigned) and found that such was a "legitimate, non-discriminatory reason for ending plaintiff's employment." The district court concluded its *Burdine* analysis by holding that, with the ultimate burden of persuasion on Smith, she failed to demonstrate that "others were treated differently in relation to the relevant policy, and presented no evidence that Wal–Mart considered her gender with regard to [its] treatment of her at any time, including during the time of her employment as well as with regard to Wal–Mart's termination of plaintiff's employment." Thus, Smith failed to show that Wal–Mart's reason for discharging her was pretextual.

The district court correctly and efficiently applied the *Burdine* calculus. Conse-

quently, the only question remaining to us is whether or not the factual findings and evidentiary ruling that the district court fed into the *Burdine* analysis were so erroneous or prejudicial as to require reversal. The most cursory recital of the facts on the record demonstrates that the district court's findings must stand.

Smith alleges error in the district court's findings as to her claims of discrimination both before and during her termination and in her claim that co-worker Elledge would not have been terminated if he had not quit. Smith's challenges hinge on her contention that Wal–Mart implemented its progressive discipline policy with a bias in favor of men, that men, and particularly Elledge, received counselling and alternatives to termination, that Wal–Mart had not informed her of its non-fraternization policy, much less of her infraction of it, and that Wal–Mart would not have discharged Elledge had he not resigned.

The trial court, after evaluating the evidence and the witnesses before it, made the following findings of fact: 1) Wal–Mart had decided to terminate both Elledge and Smith but was unable to terminate Elledge because he resigned before it could do so; 2) Smith was aware of the non-fraternization policy; 3) Smith was aware of the possibility that she could be terminated for violating said policy; 4) Smith was, in fact, terminated for violating the policy; 5) Wal–Mart articulated a legitimate, non-discriminatory reason for ending Smith's employment; 6) Smith failed to show that others were treated differently in relation to the policy; 7) Smith presented no evidence that Wal–Mart considered her gender at any time, including during the time of her employment as well as with regard to its termination of her employment; 8) Smith did not present evidence of other employees being treated differently under similar circumstances; 9) Smith, therefore, did not meet her prima facie burden of proof relative to her claim of sex discrimination.

■ Evidence in the record amply supports the district court's findings. Smith testified that she knew what Elledge knew

regarding the non-fraternization policy. Further, the evidence supports the finding that management was on the point of firing Elledge when he pre-empted them by quitting and that Wal–Mart therefore treated Smith and Elledge in precisely the same manner. Finally, Smith could produce only hollow accusations of sexism in her attempt to prove her allegation of discrimination before her termination. Consequently, Smith has not made even a dint in the propriety of the district court's findings, much less met the clearly erroneous standard. Certainly, the evidence adduced at trial sufficed to "allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1096.

Smith's challenge to the district court's refusal to allow her to question Richard Cudd, the management official who terminated her employment, also lacks merit. The gravamen of Smith's claim here is that her termination was carried out in a manner inconsistent with Wal–Mart's progressive discipline policies and that Wal–Mart's treatment of her was harsher than its treatment of Cudd, who had breached company policy more flagrantly than she. The district court ruled that Cudd's demotions and eventual resignation were not relevant to Smith's claim of sex discrimination.

This court will not overturn evidentiary rulings unless substantial prejudice results. *King v. Gulf Oil Co.*, 581 F.2d 1184, 1186 (5th Cir.1978). *Accord United States v. Killough*, 848 F.2d 1523, 1527 (11th Cir.1988). The party asserting error has the burden of proving that the error prejudiced a substantial right of that party. *Id.*

No error exists in the district court's ruling on Cudd's testimony. In order for her claim of disparate treatment to succeed under Title VII, Smith would have to show that Cudd and she had been similarly situated. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984) *reh'g denied*, 747 F.2d 710 (11th Cir.1984). To this end Smith's burden is to show "that the misconduct for which

she was discharged was nearly identical to that engaged in by a male employee whom [the company] retained." *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982). Cudd's conduct in no way involved a breach of the non-fraternization policy. He was, therefore, not similarly situated to Smith and no basis existed for an inference that Wal–Mart's treatment of Smith and Cudd was disparate such as that condemned under Title VII. Consequently, because Smith was unable to point up district court error, no substantial prejudice could result and, thus, the district court's evidentiary ruling must stand.

For the reasons stated above, the order of the district court is

AFFIRMED.