## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-41243

United States Court of Appeals
Fifth Circuit

**FILED**

January 14, 2019

Lyle W. Cayce
Clerk

BRUCE M. ANDERSON,

> Plaintiff - Appellee

v.

ROGELIO VALDEZ, In his Individual and Official Capacities,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, GRAVES, and WILLETT, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:

Bruce Anderson's job required an oath to report judicial misconduct. He now complains of retaliation for doing so—in violation of the First Amendment. That Anderson's job-imposed duty to report wrongdoing did not strip his speech of First Amendment protection has since gained clarity, but this was not clearly established in May 2014, when the events he complained of occurred. We therefore reverse the district court's denial of qualified immunity and summary judgment.

**I**

Anderson was a briefing attorney for Justice Rose Vela on Texas's Thirteenth Court of Appeals. In 2011, Vela and another justice on the court,

No. 17-41243

Gregory Perkes, unsuccessfully sought an audit of a court fund controlled by the court's Chief Justice, Rogelio Valdez. Vela later told Anderson that she had obtained records suggesting that Valdez was collecting duplicative reimbursements from the court fund and his personal campaign fund. Vela did not ask Anderson to report the potential double reimbursements, and neither Vela nor Perkes reported them; Vela said that she did not plan to do so because "it would look too political"—she was seeking the job of Chief Justice.

Anderson decided to report the double reimbursements, sending a letter marked confidential in October 2012 to the Chief Justice of the Texas Supreme Court. The Supreme Court's general counsel directed him to the State Commission on Judicial Conduct, which told Anderson it would investigate. The Public Integrity Unit of the Travis County District Attorney's Office also opened a case file. After Vela's term expired and Anderson was no longer a court employee, Anderson wrote to the Public Integrity Unit, in April 2013 and April 2014, with additional information.

In 2014, Perkes offered Anderson employment as senior staff attorney, over the objections of another justice of the court who expressed concerns about Anderson's work product, depth of knowledge, and workplace attitude. When Chief Justice Valdez learned that Perkes had hired Anderson, he told Perkes that hiring Anderson was a "bad idea" and suggested that he consult with the other justices—an unusual measure, since justices typically made their own hiring decisions. After Valdez told Perkes in May 2014 that he and the other justices did not approve of Anderson's hiring, Perkes rescinded Anderson's offer.

Anderson sued Valdez in his individual and official capacities, arguing that Valdez intervened in Anderson's hiring as retaliation for the complaint. The parties engage on whether, at the time of these events, Valdez knew that Anderson had filed his complaint with the State Commission on Judicial

No. 17-41243

Conduct; they also dispute whether the reasons given by Valdez and the other justices for not hiring Anderson were pretextual.[1] Valdez moved to dismiss, asserting that as Anderson's general professional obligations as a lawyer required his report of judicial misconduct, he spoke pursuant to his official duties in filing the complaint with the State Commission on Judicial Conduct— and that his speech was therefore not protected by the First Amendment. We affirmed the district court's denial of Valdez's motion to dismiss, holding that Anderson's general professional duties as a lawyer were not "official duties" that would transform the constitutionally protected speech of a citizen into the unprotected speech of a public employee.[2] While Anderson had sufficiently alleged a First Amendment retaliation claim to survive a motion to dismiss, we allowed for the possibility that facts would come to light at the summary judgment phase undermining Anderson's allegations or implicating legal principles that were not yet clearly established as of May 2014.[3]

Valdez now brings this interlocutory appeal[4] from the district court's denial of his motion for summary judgment. While *Anderson I* binds us in certain respects, this appeal presents a different issue. Valdez no longer argues that Anderson spoke in discharge of the general obligation of a lawyer to report judicial misconduct. He now argues that Anderson was specifically bound by the Texas Code of Judicial Conduct, which requires judges—and by incorporation, their staff—to report judicial misconduct to the State Commission on Judicial Conduct. He contends that Anderson spoke pursuant

---

[1] On this appeal, Valdez argues that there is no genuine dispute as to whether he was aware of the complaint, and Anderson argues that there is sufficient circumstantial evidence to support a finding that Valdez knew about it. We do not consider this issue.

[2] *Anderson v. Valdez* (*Anderson I*), 845 F.3d 580 (5th Cir. 2016).

[3] *Id.* at 602.

[4] "Although a denial of summary judgment is typically unappealable, defendants have a limited ability to appeal a denial of qualified immunity under the collateral order doctrine." *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 467 (5th Cir. 2014) (emphasis omitted).

No. 17-41243

to this "official duty," and under *Garcetti v. Ceballos*[5] his speech was unprotected.

## II

When reviewing an interlocutory appeal of a district court's denial of summary judgment on qualified immunity grounds, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment."[6] And we do so in the shadow of the defendant's defense of qualified immunity. Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law."[7] To overcome a defendant's assertion of qualified immunity on summary judgment, "a plaintiff must show that the evidence, viewed in the light most favorable to him, is sufficient to establish a genuine dispute '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"[8]

The Supreme Court has explained that "[a] clearly established right is one that is 'sufficiently clear that every reasonable person would have understood that what he is doing violates that right.'"[9] While a plaintiff seeking to overcome qualified immunity need not present "a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate,"[10] reflecting the principle that we are "not to define clearly

---

[5] 547 U.S. 410, 417 (2006).

[6] *Cutler*, 767 F.3d at 469 (quoting *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc)).

[7] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[8] *Cutler*, 767 F.3d at 469 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (internal quotation marks omitted).

[9] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

[10] *Id.* (quoting *al-Kidd*, 563 U.S. at 741).

## No. 17-41243

established law at a high level of generality," but rather are to pay close attention to "the specific context of the case."[11]

### III

We conclude that Valdez is entitled to qualified immunity. It was not clearly established as of May 2014 that where a briefing attorney swore as part of his employment to comply with a code of conduct requiring him to report judicial misconduct to a specific state authority, he nonetheless spoke as a citizen in reporting a judge to that authority.

### A

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment."[12] Instead, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."[13] This right is not absolute, because "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."[14] Therefore, "[t]o establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in efficient provision of public services; and (4) the speech precipitated the adverse employment action."[15]

*Garcetti v. Ceballos* settled that "when public employees make statements pursuant to their official duties, the employees are not speaking as

---

[11] *Id.* (quoting *al-Kidd*, 563 U.S. at 742, and *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

[12] *Garcetti*, 547 U.S. at 417.

[13] *Id.*

[14] *Id.* at 418.

[15] *Anderson I*, 845 F.3d at 590 (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)).

citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[16] *Garcetti* left for later the line between citizen and public-employee speech. As relevant here, after *Garcetti*, we repeatedly held that employees speaking in discharge of job-imposed obligations to report wrongdoing did so as public employees—not as citizens.[17]

Clarity came with *Lane v. Franks*' holding that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."[18] Under *Lane*, a general job-imposed obligation to detect and prevent wrongdoing does not qualify as an employee's "official duty" because "such broad [obligations] fail to describe with sufficient detail the day-to-day duties of a public employee's job."[19]

**B**

Anderson's Oath of Briefing Attorney subjected Anderson to the Texas Code of Judicial Conduct, requiring that he swear that he would "observe the standards of fidelity and diligence prescribed." In turn, the Code of Judicial Conduct requires judges—and, by extension, Anderson—"having knowledge that another judge has committed a violation of this Code that raises a substantial question as to the other judge's fitness for office [to] inform the

---

[16] *Garcetti*, 547 U.S. at 421.

[17] *See Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (holding that a police deputy acted pursuant to an official duty to enforce the laws in reporting potential sheriff misconduct); *Gibson v. Kilpatrick*, 773 F.3d 661, 671 (5th Cir. 2014) (holding that where a police chief reported mayoral misconduct to federal officials, he spoke pursuant to an official duty to prevent and detect crime); *cf. Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008) (holding that a systems analyst did not speak pursuant to official duties when reporting potential misconduct, in part because "[h]e was not in a professional position of trust and confidence like those of an assistant district attorney or a sheriff's deputy").

[18] 573 U.S. 228, 240 (2014).

[19] *Howell v. Town of Ball*, 827 F.3d 515, 523–24 (5th Cir. 2016).

State Commission on Judicial Conduct or take other appropriate action." Anderson stated multiple times that he reported Valdez to the State Commission on Judicial Conduct to meet this obligation.

*Lane* and our post-*Lane* caselaw make clear that a general obligation to report judicial misconduct does not constitute an "official duty" demarcating employee speech under *Garcetti*. That said, *Lane* was decided in June 2014—roughly one month *after* Anderson's employment offer was withdrawn—leaving unsettled whether Anderson then spoke as a citizen or as an employee.

Anderson argues that this issue is no different from the one addressed in *Anderson I*, where we held that a general duty as a lawyer to report judicial misconduct cannot constitute an "official duty" under *Garcetti* because "there is an analogue to speech by citizens who are not public employees."[20] His argument is essentially that a job-imposed duty with a "citizen analogue" is never an official duty for the purposes of *Garcetti*. But this relies on an implicit premise—that when an employee is obligated to speak under *both* the terms of employment and an analogous citizen obligation, the employee speaks only as a citizen and not also as a public employee—that we have explicitly declined to adopt. In *Gibson v. Kilpatrick*, a police officer argued that for the purposes of *Garcetti*, he did not speak in discharge of an official duty to report crime because he also spoke under his independent legal obligation as a citizen to do so.[21] We observed that endorsing his position "would raise the question that *Lane* expressly declined to answer, that is, whether there are obligations as a citizen that preempt obligations as an employee for First Amendment

---

[20] *Anderson I*, 845 F.3d at 594, 597 (emphasis omitted) (concluding that Anderson's speech pursuant to his duty as a lawyer to report misconduct was "the kind of activity engaged in by citizens—including licensed lawyers—who do not work for the government" (internal quotation marks omitted)).

[21] 773 F.3d at 669–70.

purposes."[22] Similarly, that Anderson had the same obligation as any lawyer to report judicial misconduct—*separate* from the obligation imposed by his oath of office—does not answer the question of whether he spoke as a public employee when he discharged his job-imposed duty to report.[23]

## C

Anderson also contends that even if his complaint to the State Commission on Judicial Conduct was not citizen speech, his later communications to the Travis County District Attorney's Office—made when he was no longer a judiciary employee—were. He argues that these communications alone could ground his retaliation claim. We disagree. If Valdez was entitled to discipline Anderson for his initial speech as an employee, then Anderson cannot escape the discipline of his employer for breach of his employee duties by going public with the same speech. That much was clear under *Garcetti*.[24] We conclude that it was not clearly established that Anderson's original complaint to the State Commission on Judicial Conduct was not employee speech. It follows that Valdez is entitled to summary judgment on qualified immunity grounds concerning Anderson's later contact with the District Attorney. There may be cases where a public employee's later, protected speech as a citizen was sufficiently attenuated from his earlier, unprotected speech as an employee that it can ground a retaliation claim. Not here.

---

[22] *Id.* at 670.

[23] In *Anderson I*, we had no occasion to consider the status of a job-imposed duty mirroring a "citizen analogue," because Valdez's sole argument at that stage was that Anderson had an independent—*not* job-imposed—obligation as a lawyer to report misconduct. Our decision here is not in tension with *Anderson I*.

[24] *Cf. Nixon*, 511 F.3d at 499 (holding that a public employee could not ground a retaliation claim on statements which, while "more closely approximat[ing] citizen speech" than his earlier official statements, "constitute[d] a continuation" of statements he made in his role as an employee).

No. 17-41243

* * *

As Valdez is entitled to qualified immunity because the law was not clearly established at the time of the alleged retaliation, we end our inquiry and reverse the district court's denial of summary judgment on the individual-capacity claim.[25]

## IV

Valdez also appeals the district court's denial of summary judgment on the claim asserted against him in his official capacity.[26] He argues that it is barred by the Eleventh Amendment's protection of states from private suit without their consent or congressional abrogation.[27] Anderson responds that the claim travels under *Ex parte Young*'s exception to Eleventh Amendment immunity.[28] We agree, and so "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[29]

While the equitable remedy of reinstatement can escape sovereign immunity,[30] Anderson's claim for reinstatement fails on its own terms under principles of equitable relief. Justice Perkes—who hired Anderson specifically to be *his* staff attorney—lost his bid for reelection and is no longer on the Thirteenth Court. While Anderson points out that there are still senior staff attorney positions on the Thirteenth Court, the practice of the Thirteenth

---

[25] *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (authorizing courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). We also need not address Valdez's other arguments for summary judgment on this claim.

[26] Valdez's qualified immunity defense is unavailable for this claim. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 371 (5th Cir. 2010).

[27] *Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011).

[28] *Ex parte Young*, 209 U.S. 123 (1908).

[29] *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted).

[30] *See Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996).

No. 17-41243

Court is to allow judges to conduct their own individualized hiring; the staff attorney role is similar to that of a judicial clerk who works for a specific judge.[31] There is no ongoing violation of federal law in the failure to hire Anderson for a different staff attorney position with a different judge. The problem here goes beyond mere feasibility—it is not that a staff attorney position exists with Perkes to which it may be administratively difficult to reinstate Anderson, but rather that no such position exists. We reverse the district court's denial of summary judgment on this claim.

## V

We reverse the district court's order denying Valdez's motion for summary judgment in both his official and individual capacity.

---

[31] The Thirteenth Court's administrative rules provide that "[e]ach justice shall be solely responsible for all employment and management decisions regarding his or her staff." Similarly, the court's hiring procedures provide that "[s]enior attorneys, briefing attorneys, and legal assistants shall be hired by the Justice to whom they are assigned."