# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
February 6, 2020

Lyle W. Cayce
Clerk

No. 19-60313

GALE NELSON WALKER,

      Plaintiff - Appellant

v.

ROBERT SHULER SMITH, individually and in his official capacity as District Attorney of Hinds County, Mississippi,

      Defendant - Appellee

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:15-CV-911

---

Before CLEMENT, HIGGINSON, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

This appeal arises out of an employment dispute between a former Assistant District Attorney, Gale Walker, and her boss, Robert Smith, the Hinds County, Mississippi, District Attorney. Smith fired Walker after approximately a year and a half of employment. Smith claims he fired Walker because (1) she used office letterhead to deceive a creditor into believing her

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60313

payments were late for official reasons, and (2) she had a previously unknown history of writing bad checks. Walker then sued Smith, alleging race and gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1983; First Amendment retaliation under § 1983; violation of the Computer Fraud Abuse Act ("CFAA"), 18 U.S.C. § 1030; and various state-law claims. Smith moved for summary judgment on all of Walker's claims. In two orders, dated February 5, 2019, and April 23, 2019, the district court granted Smith's motion. We affirm the district court's judgments.

We affirm the district court's rejection of Walker's state-law claims and claim for violation of the CFAA for essentially the reasons given by the district court in its order dated February 5, 2019.[1] Walker has abandoned her race discrimination claims under Title VII and § 1983 on appeal. Accordingly, this opinion analyzes Walker's claims for gender discrimination under Title VII and First Amendment retaliation only.

I.

Walker served as an Assistant District Attorney in Hinds County from August 2012 to January 2014, where Smith, the District Attorney, was her boss. In July 2013, Walker sent the following letter to a local self-storage facility, regarding her non-payment on her personal storage units:

> I am writing this letter in response to the NOTICE OF LIEN PROCEEDINGS that I received in reference to the above listed storage units. As you know, I have been waiting for approval from the State for payment of the storage fees. The problem is that I transferred, as an Assistant District Attorney, from Holmes/Humphreys/Yazoo County to Hinds County. There was a

---

[1] Walker's state-law claims that were properly appealed include the following: termination for reporting a potential breach of the check-unit computer system, in violation of Mississippi's whistleblower statute, MISS. CODE ANN. § 25-9-173; termination for reporting a violation of the CFAA, in violation of public policy; invasion of privacy by intrusion upon seclusion; and intentional infliction of emotional distress.

No. 19-60313

mix-up about the units and everything has been tied up in "red tape".

> I have inquired about the payment and I have been assured that the paperwork has been submitted to the appropriate committee. I should have the full payment no later than Friday, August 16, 2013. Will you please hold off on the sale? I don't have any other alternative at this time.

The letter was on the DA office's letterhead, and she signed the letter "Gale N. Walker, Assistant District Attorney."[2]

Around the time Walker sent her letter to the self-storage facility, the Hinds County Public Defender's Office received a letter from an unnamed person[3] alleging that Walker had written numerous worthless, or "bad" checks in her past. Walker was made aware of the anonymous letter and proceeded to report it to Smith. She alleges that she was concerned that the security of the DA's "Bad Check Unit" had been "breached . . . to actively, purposely, and with

---

[2] Walker claims she self-reported the letter and that Smith told her not to "worry about it right now." Her complaint states that she "requested a meeting with Smith. . . . [where she] admitted . . . that she had made an error in judgment" and "Smith verbalized his understanding of the act, affirmed that he forgave [her], and assured her that she did not need to worry about losing her job over the personal use of the letterhead." Smith disputes this telling of events: He stated in his affidavit that he learned of the letter from a state legislator. However, Smith argues that the issue of whether Walker self-reported is not a genuine dispute of material fact. We agree with Smith.

A brief look at the portion of the record Walker cites to back up her contention—the transcript of a hearing before an Administrative Law Judge regarding Walker's unemployment compensation—shows that Walker took Smith's words out of context. While it's true that in the ALJ hearing, Smith said he told Walker to "wait, hang on, don't worry about it right now . . . we'll talk about it later," when she "self-disclosed," he also stated that Walker knew that he was "already aware" of the letter at that time: "[Walker] actually said, I know you know about this storage situation." Smith then stated that once Walker "knew that . . . I knew, she then finally came to me." There is a stark difference between self-reporting out of remorse for one's actions and self-reporting because one believes they're close to being "caught." Walker points to no evidence in the record that she self-disclosed the letter to Smith *before* he was aware of it. Thus, the record shows Smith's alleged "assurance" that Walker would not lose her job over the letter was not an assurance, but rather, Smith telling Walker that he was investigating the situation, and that they would talk about it "later."

[3] The sender claimed to be someone facing felony charges, who had a "conflict with . . . 'G.W.'"

3

malicious intent seek information to use to threaten, coerce, harass, and intimidate . . . an officer of the court." Walker then requested and received authorization from Smith to report the possible security breach to the Mississippi Bureau of Investigation ("MBI").

Walker was fired from the DA's office on January 9, 2014. Smith terminated her because of her "history of writing worthless checks and [because] she had written a false and deceitful letter to a storage facility to which she owed money."[4] Smith also sent the check-unit documents and the storage-unit letter to the Mississippi Bar Association.[5]

With respect to Walker's race and gender discrimination claims, the district court held in its initial order that summary judgment was appropriate because Walker failed to allege a prima facie case under either Title VII or § 1983, as she failed to identify proper comparators. As for Walker's First Amendment retaliation claim—which she bases on her choice to contact the MBI to investigate a possible security breach in the Bad Check Unit—the court first granted Walker "14 days to show cause why the [c]ourt should not find that she spoke as an employee" and to "address why Smith would not be entitled to qualified immunity." In its order dated April 23, 2019, the court found that Smith was entitled to qualified immunity, reasoning that Walker

---

[4] Walker claims that Smith showed printouts of both her "bad check" documents and her letter to the self-storage unit to her former co-workers and superiors, which included sensitive information such as her social security number. We find there is no *genuine* dispute of material fact here, as Walker has offered no record evidence that Smith did so: she cites to her own deposition. None of the allegations contained therein are based on Walker's personal knowledge. *See* Fed. R. Civ. P. 56(c)(4).

[5] Walker alleged below, but does not allege on appeal, that Smith "blamed" her for reporting smoking in the Hinds County Courthouse building after a State Fire Marshal issued a warning to Smith for smoking inside. She also claimed that Smith attempted to interfere in her prosecution of a criminal case, and that "at some point . . . Smith took the case from [Walker] and her trial partner and assumed full responsibility for the management of the case." On appeal, she only relies on Smith's interference and his later indictment for hindering this prosecution as one basis for her intentional infliction of emotional distress claim.

No. 19-60313

failed to show that Smith had violated clearly established law. Walker timely appealed.

## II.

"We review the district court's grant of summary judgment de novo, applying the same standards as the district court." *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018). Summary judgment is proper "only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). And although the moving party generally bears the burden of demonstrating to the court that a genuine issue for trial does not exist, a "qualified immunity defense alters the usual summary judgment burden of proof": The burden shifts to the nonmovant to show that qualified immunity does not apply. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

## III.

### A.

Walker argues that she was discriminated against on the basis of gender and identifies three male comparators in her brief. We address her argument concerning the identified comparator named "Shaun Yurtkuran" only. With regard to the other two male comparators, as the district court explained, Walker did not offer sufficient legal authority or record evidence to support her argument that they were treated more favorably than herself.

No. 19-60313

Under Title VII, Walker must first establish a prima facie case of gender discrimination. She must show that she (1) belongs to a protected group, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) either (i) was replaced by someone outside of the protected group, or (ii) was treated less favorably than a similarly situated employee (disparate treatment). *See Haire v. Bd. of Supervisors of La. State Univ. Agric. and Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512−13 (5th Cir. 2001); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Walker is a woman who was qualified for the position and was fired. Thus, elements one through three of the prima facie test are satisfied. It's also undisputed that Walker was not replaced by someone outside of the protected group—her replacement was also female. So, our inquiry turns on whether she was treated less favorably than a similarly situated employee. Here, Walker argues that she was treated less favorably than Yurtkuran, who also worked as an Assistant District Attorney under Smith.

"[T]o establish disparate treatment a plaintiff must show that the employer 'gave preferential treatment to another employee under nearly identical circumstances'; that is, 'that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees.'" *Okoye*, 245 F.3d at 514 (first quoting *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir.1991); then quoting *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir.1990) (cleaned up)). The district court held that Yurtkuran's "conduct [was] not nearly identical" to Walker's conduct, and thus, "he [was] not a proper comparator." We find the district court was correct.

Yurtkuran engaged in inappropriate conduct concerning alcohol and social media usage. First, Yurtkuran was stopped by the police at an alcohol roadblock for driving while intoxicated. In his deposition, Smith admitted that

he went to retrieve Yurtkuran from the roadblock but dismissed the incident as one not requiring discipline: "[P]eople do go out sometimes, and they will call someone to pick them up, if they feel like they've had too much to drink." Yurtkuran also posted a public comment on Facebook that resulted in a change of venue in a capital murder case. In his deposition, Smith stated that he couldn't recall whether he disciplined Yurtkuran for the Facebook post, but that he remembered that nothing "adverse happened" because of the post and that the DA's office "got a conviction." Smith also "counseled [Yurtkuran] on an allegation of appearing in court after ingesting alcohol."

Though we certainly don't condone Smith's handling of Yurtkuran's infractions—i.e., his inaction—we fail to see how the "misconduct for which [Walker] was discharged was *nearly identical*" to Yurtkuran's conduct. *Wal-Mart Stores (No. 471)*, 891 F.2d at 1180 (emphasis added) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)). As the district court highlighted, the actions for which Smith discharged Walker—penning a false letter on the DA office's letterhead and writing worthless checks—"involved fraudulent conduct aimed at financial gain."

Even if, as Walker argues, there is no evidence that she intended to write "bad" checks, her false letter to the self-storage facility remains.[6] And as much as Walker tries to pass the letter off as a "fib [that] was just part of her desperate attempt to have a little more time to pay her bill," we simply cannot ignore the fact that Walker's letter was glaringly dishonest.[7] As the Mississippi

---

[6] We note that the record shows that Walker was arrested in 2004 for writing a worthless check.

[7] The Mississippi Rules of Professional Conduct define "Fraud" or "Fraudulent" as "conduct having a purpose to deceive." Miss. R. Prof'l Conduct Terminology. The Code proscribes "conduct involving dishonesty, fraud, deceit or misrepresentation," and notes that "[a]lthough a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving . . . dishonesty . . . are in that category." *Id*. R. 8.4(c) &

No. 19-60313

Rules of Professional Conduct reflect, dishonesty is a cardinal offense in the legal profession.[8] Thus, we hold that Walker has not shown that Yurtkuran is a proper comparator, and that she has failed to establish her prima facie case of gender discrimination.[9]

### B.

In regard to her First Amendment retaliation claim, Walker avers that Smith fired her because of her contact with the MBI concerning a possible security breach in the DA's Bad Check Unit—a breach she suspected because her own "worthless check" history had come to light. We agree with the district court's thorough analysis and finding that Smith was entitled to qualified immunity as to Walker's First Amendment claim but reiterate why Smith was afforded such immunity.

> The qualified immunity standard gives ample room for mistaken judgments, by protecting all but the plainly incompetent or those who knowingly violate the law. Thus, a public official is entitled to qualified immunity unless a plaintiff demonstrates (1) a violation of a constitutional right and (2) that the right at issue was clearly established at the time of the violation.

---

cmt. As the district court noted, the Rules state that "[a] lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's *honesty*, *trustworthiness* or fitness as a lawyer in other respects, shall inform the appropriate professional authority." *Id.* R. 8.3(a) (emphasis added).

[8] Moreover, although Walker has not established a prima facie case of gender discrimination, we note that this court has held that falsifying documents is a legitimate, nondiscriminatory reason for termination under the *McDonnell Douglas* test. *See, e.g., Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007).

[9] To the extent Walker argues she and Yurtkuran are similarly situated because both "used [their] connection with the DA to relieve [them] of responsibility," Walker did not dispute Smith's deposition testimony that "[i]t was [within the police officers'] discretion whether or not they wanted him [Yurtkuran] to be arrested or not. They had decided that they would not arrest him, and they would allow me [Smith] to come and pick him up." Thus, there is no evidence in the record affirmatively establishing that the police officers' actions were prompted by Yurtkuran's invocation of his position.

8

*DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (cleaned up). "Ultimately, 'the central concern is whether the official has fair warning that his conduct violates a constitutional right.'" *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019) (quoting *Delaughter v. Woodall*, 909 F.3d 130, 140 (5th Cir. 2018)).

In order "[t]o succeed [on] a First Amendment retaliation claim under § 1983, a public employee [such as Walker] must show: '(1) [s]he suffered an adverse employment action; (2) [s]he spoke as a citizen on a matter of public concern; (3) [her] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action.'" *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)). Here, we assume elements one and four are satisfied, and focus on element two—i.e., whether Walker *spoke as a citizen* in reporting the Bad Check Unit's possible security breach to the MBI.

On appeal, Walker barely addresses the crux of the district court's qualified immunity finding, which concerns the "clearly established law" prong of its analysis. The court held that "Walker has not met her burden of establishing that Smith violated clearly established law" because she failed to "provide . . . a case indicating that an ADA who works at times alongside an outside law-enforcement agency speaks as a citizen when she seeks and receives permission to initiate an investigation with one of those agencies." We agree—and Walker concedes—that the clearly established law regarding speech as a citizen at the time of Walker's termination is dictated by *Garcetti v. Ceballos*, 547 U.S. 410 (2006). *Garcetti* says that, "when public employees make statements pursuant to their *official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does

not insulate their communications from employer discipline."[10] *Id.* at 421 (emphasis added).

Walker claims that contacting the MBI was not within the scope of her "official duties," and therefore, "[i]t is implicit that Smith had notice in 2014" that her speech was "made as a citizen and not as an employee." She relies on one case, *Davis v. McKinney*, 518 F.3d 304 (5th Cir. 2008), to support this assertion. *Davis* is clearly distinguishable from the case at hand for one main reason: Smith *authorized* Walker to contact the MBI.

In *Davis*, an employee of a public university contacted the FBI because she suspected that her co-workers were watching pornography, including child pornography, on their university-issued computers. *Id.* at 307−10. Her superiors—up the so-called "chain of command"—disregarded her report, so she went outside the "chain" and reported her concerns to the FBI. *Id.* The court held that, "[i]f . . . a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen." *Id.* at 313 (citing *Freitag v. Ayers*, 468 F.3d 528

---

[10] While we agree that *Garcetti*'s "official duties" test was far from clear, Walker cannot rely on the Supreme Court's holding in *Lane v. Franks*, 573 U.S. 228 (2014), because it was issued in June 2014—after Walker lost her job. *See Howell v. Town of Ball*, 827 F.3d 515, 525 (5th Cir. 2016) (noting that "the Supreme Court did not emphasize [*Lane*'s holding] that only speech made in furtherance of an employee's 'ordinary' job duties is not protected until nearly three years after [the plaintiff] was discharged"). *Lane* held that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." 573 U.S. at 240. "Under *Lane*, a general job-imposed obligation to detect and prevent wrongdoing does not qualify as an employee's 'official duty' because 'such broad [obligations] fail to describe with sufficient detail the day-to-day duties of a public employee's job.'" *Anderson v. Valdez*, 913 F.3d 472, 477 (5th Cir. 2019) (alteration in original) (quoting *Howell*, 827 F.3d at 524). As the district court explained, the recent *Howell* and *Anderson* cases also dealt with pre-*Lane* First Amendment retaliation claims. In both cases, the court concluded that qualified immunity shielded the public officials in question from liability because the First Amendment citizen-employee standard was not clearly established at the time of the relevant employees' terminations. *See Howell*, 827 F.3d at 525−26; *Anderson*, 913 F.3d at 478.

(9th Cir. 2006)). Thus, the court analyzed communications to an employee's superiors and outside persons separately. *Id.* at 314−17. But here, we cannot conduct such an analysis, because Walker did not take her concerns to the MBI "in addition to raising" them with her supervisor, Smith. Instead, she followed Smith's directive to contact the MBI regarding the matter.[11] As Smith states in his brief, "Walker's complaint to the MBI should be viewed only as a continuation of her up-the-chain report made to her employer, Smith."

Further, Walker fails to point us to any record evidence showing that speaking to the MBI was *not* an "official duty." In fact, she admitted in her deposition that she "worked alongside law enforcement agencies."[12] The Bad Check Unit was housed in the DA's office, and as explained above, she was instructed by her supervisor, Smith, to report the possible security breach.

Because (1) the facts in *Davis* are inapposite to the case at hand, and (2) the record is devoid of evidence showing that Walker's correspondence with the MBI was not an "official duty," we hold that Smith is entitled to qualified immunity, as the law surrounding "citizen-versus-employee" speech was not clearly in Walker's favor at the time of her firing. Put differently, *Garcetti* and *Davis* could not have provided Smith "fair warning" that his conduct violated Walker's First Amendment rights.

Finally, we note that it's unlikely that the security breach was actually "a matter of public concern." Walker was concerned about *her own* "bad check"

---

[11] A recent case in this circuit, *Rodriguez v. City of Corpus Christi*, 687 F. App'x 386 (5th Cir. 2017), supports our conclusion. In *Rodriguez*, the court held that an employee who made a statement "intended for the benefit of [her] employer" spoke as an employee, rather than a citizen. *Id.* at 390. There, the court reasoned, "although [the plaintiff] considered her action to be voluntary, she admitted that [her supervisor], who had authority to assign [the plaintiff] work, requested that she [contact] human resources." *Id.* The plaintiff "thus did not act solely on her own initiative but did so pursuant to a supervisor's directive." *Id.*

[12] Walker says the district court construed this statement to "creat[e] an excessively broad job description," in violation of *Garcetti*. However, the record evidence she cites is irrelevant: it merely establishes other tasks she performed as an ADA.

history and offers no record evidence that any other employees had been affected by the supposed security breach. Thus, it's likely that this was a matter that "implicate[d] only the private employment interests of the plaintiff." *Cutrer v. McMillan*, 308 F. App'x 819, 821 (5th Cir. 2009).

Walker has not met her burden of proving that the qualified immunity defense does not apply. Thus, we hold that Smith is entitled to such immunity. We AFFIRM the district court's judgments.